

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ANIEL O. GRILLASCA-PIETRI
**Plaintiff**

v.                                       **CIVIL NO.**   97-2933 (JAG)

PORTORICAN AMERICAN
BROADCASTING CO., INC., <u>et al.</u>
**Defendants**

---

### OPINION AND ORDER

Plaintiff Aniel O. Grillasca-Pietri (hereinafter "Grillasca") sued Portorican American

Broadcasting, Co., Inc. (hereinafter "PABC") and its President and General Manager Alfonso

Gimenez Porrata (hereinafter "Gimenez"), alleging that they fired him in violation of the American

with Disabilities Act of 1990 (hereinafter "ADA"), as amended, 42 U.S.C. §12101 <u>et seq.</u> and the

Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"), as amended, 29 U.S.C. §621

<u>et seq.</u> Grillasca has also invoked this Court's pendent jurisdiction to entertain claims under Law

100 of June 20, 1959, as amended, 20 L.P.R.A. §146 <u>et seq.</u>, Law 80 of May 30, 1976, as amended,

20 L.P.R.A. §185(a) <u>et seq.</u> and Law 45 of April 18, 1935, as amended, 11 L.P.R.A. §7.  In this

respect, Grillasca alleges that because defendants fired him while he was on medical leave at the

State Insurance Fund (hereinafter"SIF"), he is entitled to back pay, front pay, and loss of earnings.

On December 15, 1999,  PABC moved for partial summary judgment with respect to the ADA

claim, the SIF claim, and requested a limitation on potential damages.  For the reasons stated below,



1



the Court GRANTS the motion as to the ADA claim and DENIES the motion as to the SIF and

limitation of damages claims.

## FACTUAL BACKGROUND

In 1989, Grillasca began working for PABC as an accountant. Towards the end of 1995, he

began to experience health problems. During the first months of 1996, defendants allegedly began

harassing Grillasca by making unreasonable job-related demands, putting him down because of his

health condition, and submitting him to unreasonable levels of stress. (Docket No. 33, Exhibit 2 at

40,101,129.) On June 10, 1996, Grillasca sought medical treatment with the SIF. The SIF referred

Grillasca to a psychiatrist, who reported that Grillasca "present[ed] an emotional condition" that

caused him to be disinterested in almost all activities, resulted in a diminished ability to concentrate,

and caused anxiety with panic symptoms. The psychiatrist reported that Grillasca "has been under

severe stress due to laboral(sic) problems and the lost(sic) of his job that caused (precipitated) his

emotional condition." (Id., Exhibit 1 at 3-4.)

On August 1, 1996, while Grillasca was on medical leave by order of the SIF, he received

a letter from Gimenez informing him PABC was firing him as of that date. (Id., Exhibit 5.) The

letter stated that PABC was firing Grillasca because the company was eliminating his position due

to an agreement with Primedia Broadcasting Group (hereinafter "PBG") for the operation of PABC's

radio facilities. (Id., Exhibit 4 at 112.) On December 31, 1997, Grillasca brought suit alleging that

PABC's proffered reasons for dismissing him were pretextual and motivated by age and disability

discrimination.

## DISCUSSION

The standard for summary judgment is governed by Fed. R.Civ. P. 56. The court should

grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(c); see Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A contested fact is 'material' when it has the potential to change the outcome of the case. Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). An issue is genuine if a reasonable jury could resolve the dispute for the nonmoving party. Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In order to defeat a motion for summary judgment, the party opposing the motion must "present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-moving party must show that a trial-worthy issue exists and must point to specific facts that demonstrate the existence of an authentic dispute. Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Furthermore, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Nonetheless, the Court must never "weigh the evidence and determine the truth of the matter," Lipsett v. University of P.R., 864 F.2d 881, 895 (1st Cir. 1988) (quoting Anderson, 477 U.S. at 249), and "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." Woodman v. Haemonetics Corp., 51 F.3d 1087,

1091 (1st Cir. 1995). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). "If, after this canvassing of the material presented, the district court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion." Lipsett, 864 F.2d at 895.


## GRILLASCA'S ADA CLAIM

To establish a prima facie case under the ADA, Grillasca must prove by a preponderance of the evidence: (1) that he is disabled within the meaning of the ADA; (2) that he is able to perform the essential functions of her job, with or without reasonable accommodation; and (3) that the adverse employment decision was based in whole or in part on his disability. Phelps v. Optima Health Inc., 251 F.3d 21, 24 (1st Cir. 2001); Marcano-Rivera v. Pueblo Int'l., 232 F. 3d 245, 251 (1st Cir. 2000); Garcia-Ayala v. Lederle Parenterals Inc., 212 F.3d 638, 646 (1st Cir. 1999).

**1. Whether Grillasca is disabled under the ADA**

A disability under the ADA is a physical or mental impairment that substantially limits one or more of a person's major life activities. 42 U.S.C. §12102(2)(A)-(C); see also Santiago-Clemente v. Executive Airlines, 213 F.3d 25, 30 (1st Cir. 2000). In order to determine whether Grillasca is disabled under the ADA, the Court must conduct a tripartite analysis. Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002); Bragdon v. Abbot, 524 U.S. 624, 631 (1998). First, Grillasca must prove that he suffers from a physical or mental impairment. Carroll, 294 F.3d at 238. Second, the Court must evaluate the life activities affected by the impairment to determine if they constitute a "major" life activity. Id. Lastly, "tying the two statutory phrases together, we ask whether the

impairment substantially limits the activity found to amount to be a major life activity." <u>Lebron Torres v. Whitehall Labs.</u>, 251 F.3d 236, 239-40 (1st Cir. 2001); <u>see also</u> <u>Gelabert-Ladenheim v. American Airlines</u>, 252 F. 3d 54, 55 (1st Cir. 2001). Furthermore, Grillasca must possess a record of such impairment and be regarded as having such an impairment. 42 U.S.C. §12102 (2); 29 C.F.R. §1630.2 (e)(2)(g)(1)(2)(3).

Defendants argue that Grillasca's condition does not meet the ADA's definition of physical or mental impairment. They claim that because Grillasca was not diagnosed as having an identifiable stress disorder, his emotional and stress related condition cannot be considered a disability. (Docket No. 24 at 2.)  They cite to the US EEOC Technical Assistance Manual on the Employment Provisions of the ADA, which states that "stress" and "depression" may or may not be considered impairments, depending on whether the condition results from a documented physiological or mental disorder. <u>Id</u>. Grillasca argues that he has a record of an impairment with the SIF and is regarded as having such an impairment.  Nonetheless, "under the framework...it is insufficient to merely submit evidence of a medical diagnosis of an impairment.  Rather, those seeking ADA protection must offer evidence that the extent of the limitation [caused by their impairment] in terms of their own experience...is substantial."  <u>Carroll</u>, 294 F.3d at 239 (quoting <u>Toyota Motor Mfg. Ky. Inc. v. Williams</u>, 534 U.S. 184, 122 S.Ct. 681 at 691 (2002)).

Grillasca avers that his condition significantly restricted his ability to perform accounting and as such restricts the major life activity of working. (Docket No. 33 at 6-7.)  According to the US EEOC Regulations, "working" is a major life activity and it is substantially limited when plaintiff is "(i) ...significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and

abilities." 29 C.F.R. §1630.2(i),§1630.2(j)(3)(i)(2001); Gelabert-Ladenheim, 252 F.3d at 58. Furthermore, "when the major life activity of working is at issue (as opposed to any other major life activity), the plaintiff assumes a more fact-specific burden of proof." Id. (quoting Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 11 (1st Cir. 1999)).

To be substantially limited in the major life activity of working, Grillasca "must be precluded from more than a particular job." Santiago Clemente, 213 F.3d at 32 (holding that a flight attendant with an ear condition was not substantially limited in her ability to work because she could successfully continue her employment in other positions within the company); see also Gelabert-Ladenheim, 252 F. 3d at 58 (holding that though physically impaired, an employee was not disabled because she was not substantially limited in any major life activity); Carroll, 294 F.3d at 240. Grillasca claims that he can do everything a normal person can do, but not in excess, to avoid stress. (Docket No. 24 at 10.)

The record is unclear as to whether Grillasca's condition precluded him from engaging in other gainful employment. (Docket No. 46, Exhibit at 4.) It is also well-settled that an employer need not create a new position or forego the essential function of the employee's position to accommodate an employee's disability. Laurin v. Providence Hospital, 150 F.3d 52, 56 (1st Cir. 1998)("An employer need not accommodate a disability by foregoing an essential function of the employment position."); Phelps, 251 F.3d at 27 ("An employer is not required by the ADA to create a new job for an employee nor to re-establish a position that no longer exists."); Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 20 (1st Cir. 1998) (quoting Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995)) ("The ADA does not require an employer to reallocate job duties in order to change the essential function of a job."))

Nonetheless, as in <u>Carroll</u>, "this case does not require us to decide whether anxiety disorder or job-related stress is an impairment, nor whether working is a major life activity within the meaning of the ADA." <u>Carroll</u>, 294 F.3d at 239. Assuming *arguendo* that Grillasca's condition is an impairment that substantially limits the major life activity of working, this alone would not entitle him to relief. Grillasca must also prove that he is a qualified individual under the ADA. His claim fails in this second prong of his *prima facie* case.

## 2. Whether Grillasca is a "qualified individual" under the ADA

Determining whether a plaintiff is a "qualified individual" under the ADA requires a two-part inquiry. Grillasca must demonstrate (1) that he satisfies the prerequisites for his position and (2) that with or without reasonable accommodation, he is capable of performing the essential functions of his job. <u>See</u> 29 C.F.R. §1630.2(m); <u>Phelps</u>, 251 F.3d at 25; <u>Soto-Ocasio</u>, 150 F.3d at 15. The burden is on Grillasca to prove that he had the ability to return to work and informed defendants that he required a reasonable accommodation to facilitate his employment. <u>Soto-Ocasio</u>, 150 F.3d at 18. While determining a reasonable accommodation may require an employer to "initiate a dialogue with an employee in order to determine an appropriate accommodation," <u>see</u> 29 C.F.R. §1630.2(o)(3); <u>Kvorjak</u>, 259 F.3d at 52, the employer needs to be on notice that his employee suffers a disability and thus has a need for an accommodation. <u>Reed v. Lepage Bakeries, Inc.</u>, 244 F.3d 254, 261 (1st Cir. 2001) (citing Henry Perret, Jr. 1 AMERICANS WITH DISABILITIES ACT HANDBOOK, 4017, at 121 (3d ed. 1997)); <u>see also</u> <u>Soto-Ocasio</u>, 150 F.3d at 18.

Defendants argue that even if Grillasca is regarded as having a disability, they could not have reasonably accommodated him. First, they argue, Grillasca is totally disabled, and, as such, he cannot perform the essential function of his job. Second, they contend that Grillasca never requested

7

an accommodation. Third, they claim it is plainly unreasonable to require them to prevent stress-producing situations at the workplace. Therefore, a determination of whether Grillasca is a qualified individual turns on whether reasonable accommodations, if provided, would enable him to perform the essential functions of his job.

The ADA states that reasonable accommodations may include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustments or modifications of examinations, training materials or policies the provision of qualified readers, interpreters, and other similar accommodations for individuals with disabilities. 42 U.S.C. §12111(9)(A)(B).

Grillasca bears the burden of proposing an accommodation that would enable him to perform the job effectively, and that is feasible for the employer. Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001); Phelps, 251 F.3d at 26; Reed, 244 F.3d at 257. "If the plaintiff succeeds in carrying this burden, the defendant then has the opportunity to show that the proposed accommodation is not as feasible as it appears but rather that there are further costs to be considered." Reed, 244 F.3d at 259.

The record proffers no evidence as to when and how Grillasca informed his employer regarding his disability and requested a special accommodation. (Docket No. 24, Exhibit 4 at 112.) Grillasca's failure to put the employer on notice of his disability and the need for accommodation is a "fatal flaw." Reed, 244 F.3d at 260. Indeed, "these grounds suffice to dispose of his case." Id. The accommodation requirement does not apply unless triggered by a request from the employee. Id. ("The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace."); Kvorjak, 259 F.3d at 55 ("A plaintiff bears the burden of proposing an accommodation that would enable him to perform his job

8

effectively and is, at least on the face of things, reasonable."). Grillasca's job-related stress and lack of concentration simply do not allow for a finding that his employer was on sufficiently direct and specific notice that he needed a special accommodation.

Furthermore, Grillasca fails to explain how the accommodation he seeks would enable him to perform the functions of his job and whether such an accommodation would be reasonable. He only stated that "probably with some plain rest, plaintiff could have continued working as an accountant at WPABC." (Docket No. 33 at 110.) This statement is insufficient to establish how exactly the rest accommodation would have enabled him to perform his job. In addition, defendants correctly contend that no reasonable accommodation was viable because preventing stress-producing situations at work is an unreasonable accommodation as a matter of law. See Marino v. U.S. Postal Serv., 25 F.3d 1037, 1039 (1st Cir. 1994)(quoting Pesterfield v. Tennessee Valley Auth., 941 F.2d 437, 442 (6th Cir. 1991)) ("It would be unreasonable to require that [the employer] place plaintiff in a virtually stress-free environment and immunize him from any criticism in order to accommodate his disability.") Grillasca has not proffered enough evidence to support a finding that he requested a reasonable accommodation or that he engaged in an interactive process with his employer. Thus, he has failed to establish a *prima facie* case for disability discrimination under the ADA because he is not a qualified individual under the Act. The Court therefore grants defendants' motion on this claim.

## GRILLASCA'S SIF CLAIM

Article 5(a) of the Puerto Rico Workmen's Accident Compensation Law provides that:

In the cases of working disability according to the provisions of this chapter; the employer shall be under obligation to reserve the job filled by the laborer or employee at the time the accident occurred, and to reinstate him therein, subject to the following conditions:

9

(1) That the laborer or employee demand reinstatement from his employer in his job within the period of fifteen (15) days counted from the date the laborer or employee is discharged from treatment, provided such demand is not made after the lapse of twelve months from the date of the accident;

(2) That the laborer or employee be mentally and physically fit to fill said job at the time he demands reinstatement from his employer, and

(3) That said job still exists at the time the laborer or employee demands reinstatement. (The job shall be understood to exist when the same is vacant or is being filled by another laborer or employee. The job shall be presumed to be vacant when the same was filled by another laborer or employee within thirty (30) days following the date in which the demand for reinstatement was made.) 11 L.P.R.A. §7.

The Supreme Court of Puerto Rico has found that Art. 5(a) has two components: (1) the obligation to keep the injured employee's job available for one year and, (2) the obligation to reinstate him after the SIF discharges him, so long as the employee seeks reinstatement within the one year reserve period and he meets the three statutory conditions. Garcia v. Darex Puerto Rico, 99 JTS 84; 1999 WL 727434, 3 (P.R.); see also Rivera-Flores v. P.R.T.C., 64 F.3d 742, 750 (1st Cir. 1995). An employer's liability is different depending on which of the two components of the Workmen's Compensation Law is breached. See Garcia, 1999 WL 727434 at 4 (holding that the reserve period is independent of whether at the end of the period, the employee has the ability to seek reinstatement). An employer that breaches the duty to hold a disabled employee's job open for the reserve period is liable for any damages, not including back-pay or front-pay, that his non-compliance causes to the employee. Id. at 5. That employee cannot seek reinstatement, back-pay or front-pay, however, unless he meets the three statutory requirements: (1) requesting reinstatement within the applicable time-frame; (2) being mentally and physically capable to return to work; and (3) that his position be in existence at the time he seeks reinstatement. Reinstatement and salaries are remedies that are only available to employees who meet these three statutory requirements,

10

regardless of whether they are fired during the one year reserve period or thereafter. Garcia, 1999 WL 727434 at 5; see also Rivera-Flores, 64 F.3d at 750.

Nonetheless, the protection offered by article 5(a) is not absolute because an employer charged with firing an employee illegally may raise the defense of just cause. An employer will not be liable for firing a disabled employee if there is just cause for the negative employment decision, regardless of whether the firing takes place during the one year reserve period or afterwards. Garcia, 1999 WL 727434 at 6. The remedies provided by Art. 5(a) are triggered only when an employee is fired without just cause.

**1) Duty to hold disabled employee's job open for one year period**

Turning to an analysis of PABC's potential liability, it is evident that PABC violated the first duty imposed by the statute. It did not hold Grillasca's job open for him for a year after the date of injury. Grillasca was fired while receiving treatment at the SIF on August 1, 1996. This date was prior to the one year period from the date of injury, which the SIF determined dated back to December, 1995. Consequently, PABC was required to hold Grillasca's job open for him until December, 1996. It did not. By breaching this first component of the Workmen's Accident Compensation Law, PABC could be liable to Grillasca for any damages that his termination caused him.

**2) Duty to reinstate employee if he meets statutory conditions**

Turning to the second inquiry, the record does not allow a finding that Grillasca meets even the first of the three statutory requirements necessary to seek reinstatement, back-pay or front-pay. There is no evidence that Grillasca requested reinstatement within 15 days from his discharge and prior to the expiration of the one-year reserve period. (Docket No. 33 at 14.) In fact, the SIF did not

-11-

discharge Grillasca until March 11, 1999. (Docket No. 24 at 7.) Grillasca remained disabled and

unable to return to work. (Docket No. 37 at 6-7.)    Because Grillasca does not meet the first of the

three statutory requirements imposed by the law, it is unnecessary to discuss whether Grillasca was

mentally and physically able to request reinstatement or whether his position was in existence at the

time of his discharge. PABC is therefore not liable for failing to reinstate Grillasca or for his

earnings had he been reinstated.

**3) Just Cause for dismissal**

PABC's liability to Grillasca for its failure to hold his job open for a year is nevertheless

contingent on whether there was just cause for his dismissal. Just cause would excuse PABC from

its obligation to hold Grillasca's job open for him during the one-year reserve period. Defendants

allege that the reason for Grillasca's termination was an agreement between PABC and PBG for the

operation of the radio facilities whereby Grillasca's position was eliminated. (Docket No. 33,

Exhibit 4 at 112.) Article 2 of Law No. 80 provides that one of the instances that allows for a

determination of just cause for discharge is when the company is undergoing reorganization changes

or when reductions in employment are made necessary due to a decrease in sales, production, or

profits. See 29 L.P.R.A. §185(b). Therefore, summary judgment can only be granted if the

uncontested facts establish that the agreement between PBG and PABC constituted a corporate

reorganization that justified Grillasca's termination. Grillasca alleges that he was the only employee

terminated due to the lay-off plan resulting from the agreement. (Docket No. 36 at 2). It is a

contested fact whether PABC terminated Grillasca due to the PABC-PBG Agreement or rather as

mere pretext to illegally discriminate against him on the basis of his age or disabilities. (See Docket

No. 33, Exhibit 3 at 69.) A genuine controversy of fact exists regarding whether there was just cause

-12-

for Grillasca's termination and, therefore, whether he is entitled to any damages resulting from his termination. Accordingly, the Court denies defendants' summary judgment motion as to the SIF and limitation of damages claims.

## CONCLUSION

In light of the foregoing, the Court GRANTS defendants' partial summary judgment motion on the ADA Claim and DENIES the motion as to the SIF and limitation of damages claim. (Docket No. 24.) Accordingly, the Court dismisses Grillasca's ADA claim with prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of October, 2002.

JAY A. GARCIA-GREGORY
United States District Judge

-13-